IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HORSEHEAD CORPORATION,** a Pennsylvania Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:15cv198<br>**Electronic Filing** |
| **TOPCOR AUGUSTA, LLC,** | ) ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

AND NOW, this 11th day of January, 2019, upon due consideration of 1) defendant Topcor's motion for summary judgment, 2) plaintiff's motion for partial summary judgment, 3) the Report and Recommendation of the Magistrate Judge addressing the same and 4) the parties' submissions in conjunction therewith, and after *de novo* review of the record, IT IS ORDERED that 1) defendant's motion for summary judgment be, and the same hereby is, granted as to count III and denied as to counts I and II and 2) plaintiff's motion for partial summary judgment be, and the same hereby is, granted. The Report and Recommendation of the Magistrate Judge as augmented herein is adopted as the opinion of the court.

Defendant's motion for summary judgment with respect to Count III properly has been granted. Count III seeks to hold defendant liable for breach of contract via indemnification. The indemnification clause of the parties' agreement states in relevant part:

> In addition to the obligations of [Defendant] Contractor under the preceding paragraph, Contractor does hereby agree to defend, indemnify and save harmless [Plaintiff] Owner and its affiliates and their employees, officers, directors, and agents against any and all actions, claims, demands, losses or liabilities….

P-57 § 12.2.

Courts in this circuit have interpreted the phrase "defend, indemnify, and hold harmless"

to indicate an intent to restrict indemnification obligations to third party claims.  See Equitrans Services, LLC v. Precision Pipeline, 154 F. Supp.3d 189, 203-04 (E.D. Pa. 2015); Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 255 (3d Cir. 2010); Kellers Sys., Inc. v. Transport Int'l Pool, Inc., 172 F. Supp.2d 992, 998-99 (N.D. Ill. 2001) (concluding that, under Pennsylvania law, an indemnification provision requiring a party to "defend" and "hold harmless" was limited to third-party claims).  Furthermore, Pennsylvania law requires that indemnity clauses be construed narrowly against the party seeking indemnification.  Equitrans, 154 F. Supp.3d at 204.  In light of these considerations, we interpret the agreement's indemnification clause to require defendant to indemnify plaintiff against claims made by third parties.  To read the agreement otherwise would require defendant to defend, indemnify, and save harmless plaintiff from itself.

No claim in this case involves a third party.  Consequently, defendant is entitled to summary judgment on Count III.

Defendant's contention that plaintiff did not fulfill its contractual duties regarding QA/QC testing and so cannot prevail on a claim for breach of contract is unavailing.  Count I of plaintiff's complaint alleges breach of contract.  Defendant's motion for summary judgment as to this count properly has been denied.

While the contract clearly places responsibility for QA/QC testing on plaintiff, it is silent with regard to spark testing, giving the court no indication as to whether spark testing must be included in QA/QC testing.  As is readily apparent from a review of the record, there is a material dispute as to whether spark testing is customary in QA/QC testing in this industry.

Under Pennsylvania law, custom is always relevant and admissible in construing commercial contracts and its application does not depend on an obvious ambiguity in the words

2

of the contract. See Sunbeam Corp. v. Liberty Mut. Ins. Co., 781 A.3d 1189, 1193 (Pa. 2001). This prevents the court from determining as a matter of law that plaintiff did not fulfill its contractual duties under the agreement, and the parties must be permitted to submit extrinsic evidence to establish whether spark testing was included in QA/QC testing.

Defendant's arguments seeking to gain summary judgment as to plaintiff's breach of warranty claim are misplaced. Count II of plaintiff's complaint alleges defendant breached the warranty it made in the agreement. Defendant's motion for summary judgment regarding this count must be denied for a number of reasons.

First, defendant essentially alleges the relevant warranty of the agreement was contingent on plaintiff or others performing adequate QA/QC testing. While it is unclear, if defendant is alleging that under the agreement's warranty it is not liable for its performance unless spark testing was performed by plaintiff or a third party, the court disagrees. Nowhere in the warranty does it condition defendant's performance and quality of work upon the QA/QC testing of plaintiff or anyone else. Second, defendant alleges that "defects" in its work does not include coating failures, coating conditions, or leaks. It is almost unfathomable for defendant to advance such a contention because that is exactly the work it was hired to perform.

Third, defendant contends that under the terms of the warranty it is not liable for defects discovered one year after the completion of performance. The agreement states in relevant part: "[i]f any defect in the WORK arises within 12 months after completion, the CONTRACTOR shall promptly correct such defect at no cost to OWNER." Appendix No. 65, § 5.1 at 5. The provision does not provide an express warranty limiting defendant's liability to defects detected within one year of completion of performance; to be enforceable, express warranties must clearly state their terms. See Mitsubishi Corp. v. Goldmark Plastic Compounds, Inc. 446 F. Supp.2d

378, 385 (W.D. Pa. 2006); Goodman v. PPG Industries, Inc., 849 A.2d 1239, 1243 (Pa. Super. 2004). Its terms provide only that defendant will fix any defect which arises within one year free of charge. It does not expressly eliminate liability for defects which arise after one year.

Each of defendant's arguments regarding the application of the warranty provision fall short. Accordingly, the breach of warranty claim remains for trial.

Defendant's reliance on the concept of proximate cause is wide of the mark. Defendant contends it is entitled to summary judgment because plaintiff will not be able to prove the defendant's actions were the proximate cause of plaintiff's injuries and plaintiff has not separated its damages. But these perceived shortcomings in plaintiff's evidence do not defeat its causes of action here.

To recover for damages under a breach of contract claim, the plaintiff must be able to establish a causal connection between the defendant's actions and the resultant damages. See Enslin v. Coca-Cola Co., 739 Fed. Appx. 91, 95 (3d Cir. 2018), citing Logan v. Mirror Printing Co. of Altoona, PA, 600 A.2d 225, 226 (Pa. Super. 1991). The plaintiff must show 1) the damages naturally and ordinarily resulted from the breach, 2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and 3) they can be proved with reasonable certainty. Id. The plaintiff does not have to establish the defendant's actions were the proximate cause of the damages.

Here, plaintiff has provided expert testimony alleging there is a direct connection between the alleged deficient work performed by defendant and the leaks which resulted in damages to plaintiff's facility. We cannot therefore conclude there is no material dispute as to whether a causal connection between defendant's work and plaintiff's damages can be established.

4

As for separation of damages, a plaintiff may be denied recovery entirely where the court cannot isolate the damages caused by the breach from those attributable to other factors. See S.J. Groves & Sons Co. v. Warner Co., 576 F.2d 524 (3d Cir. 1978). In SJ Groves, the difficulty was in determining whether the plaintiff's conduct or the defendant's breach actually caused the damages, specifically concrete to fail. Both parties had worked together in performing this aspect of the work and the conduct of each had contributed to the failure. Other outside factors had contributed to the failure as well.

The inability to isolate damages is another way of arguing that the damages arising from the breach could not be proven with reasonable certainty, or that they were too speculative. The court in SJ Groves could not easily discern whether the breach of the contract actually caused the concrete to fail, meaning whether the breach actually resulted in identifiable damages. It nevertheless upheld the finder of fact's determination that twenty-five percent of the damages could be identified and attributed to the defendant's breach.

In contrast to SJ Groves, there is no confusion as to which party installed the liner to seal the tanks to prevent them from leaking. There likewise is no dispute that the tanks leaked. And there is no dispute that property damage occurred from the leaks. Defendant is instead arguing plaintiff exacerbated the damages through its own actions after the tanks began leaking, and so now it is unclear how much of the damages can be attributed to defendant. This argument is not in line with reasonable certainty doctrine:

> "The test of whether damages are remote or speculative [and thus cannot be calculated with reasonable certainty] has nothing to do with the difficulty in calculating the amount [of damages], but deals with the more basic question of whether there are identifiable damages…[D]amages are speculative only if the uncertainty concerns the fact of damages rather than the amount."

Altoona, 600 A.2d at 227. Given the facts of this case, we cannot say that the trier of fact would

be unable to find identifiable damages from the leaks. The difficulty in attributing those damages to the parties' respective undertakings must be left for the reasoned determinations of the jury.

Defendant also claims the damages were not reasonably foreseeable at the time of contracting. Defendant's arguments amount to its inability to predict plaintiff's actions after the time of contracting, and improperly attempts to fold contributory/comparative negligence doctrine into the reasonable foreseeability of contract damages. But it stretches the bounds of reason to suggest that the parties did not consider property damage resulting from leaking acid when they were contracting to line tanks to prevent acid from leaking. For this reason, we cannot countenance defendant's position.

Defendant argues it is entitled to summary judgment because plaintiff has failed to provide expert testimony to estimate the costs of repairs. Plaintiff carries the burden of proving damages to a reasonable certainty and has offered several repair estimates from various sources which may well be found to establish a reasonable amount of damages. We agree with Magistrate Judge Mitchell that at this juncture it is inappropriate to determine whether plaintiff has carried its ultimate burden, and thus there is a genuine dispute of material fact on this matter.

Defendant's last contention is that recovery should be limited to direct damages through the agreement's limitation on consequential damages provision. The court declines to do so.

The clause states:

> Other than for obligations to indemnify as specified in this agreement, in no event will CONTRACTOR be liable for special, incidental, or consequential damages whether based upon negligence, breach of contract, breach of warranty or otherwise including but not limited to loss of use, loss of revenue or loss of profits.

Exhibit P-55. Defendant asserts that the measure of direct damages should be limited to the

scope of the work it was contracted to provide – re-lining the surface of the tanks and the containment area. Plaintiff responds that all of the damages should be considered direct and not consequential.

It is clear that plaintiff is not asking for loss of use, loss of revenue, or loss of profits; but it is not yet clear how much of the total damages it seeks to recover is direct. The line between direct and consequential damages often is not easily defined, and ultimately such determinations turn on the intent of the parties. That intent is best ascertained from the language of the agreement. See Atlantic City Assocs., LLC v. Carter & Burges Consultants, Inc., 453 F. App'x 174, 179 (3d Cir. 2011). Unless obvious and clear, this interpretation is to be made by the trier of fact.

Here, the words of the agreement only indicate clearly that loss of use, loss of revenue, and loss of profits will be considered consequential damages. It does not clearly define other examples of such damages. And Plaintiff has proffered sufficient evidence to present a genuine issue of material fact as to whether its claimed damages are direct.

Plaintiff's motion for partial summary judgment on Defendant's affirmative defense of setoff properly has been granted. Defendant sold the right to its setoff claim to Claims Recovery Group, LLC on September 14, 2016. But even if this were not the case, defendant's claim was extinguished by Article VIII § A of the Horsehead Bankruptcy Plan issued by the United States Bankruptcy Court for the District of Delaware on September 9, 2016.

In this circuit, "the right of a creditor to set-off in a bankruptcy reorganization proceeding must be duly exercised in the bankruptcy court before the plan of reorganization [is] confirmed; the failure to do so extinguishes the claim." In re Continental Airlines, 134 F.3d 536, 542 (3d Cir. 1998). Defendant did not assert or otherwise exercise the right before the bankruptcy court,

and so the right of setoff was extinguished. Given this state of affairs, it cannot be disputed that Defendant no longer has the affirmative defense of setoff and recoupment. Consequently, plaintiff's motion for partial summary judgment properly has been granted.

                <u>s/David Stewart Cercone</u>
                David Stewart Cercone
                Senior United States District Judge

cc: The Honorable Robert C. Mitchell,
   United States Magistrate Judge

  Jordan M. Webster, Esquire
  Brian H. Simmons, Esquire
  Eric M. Spada, Esquire
  Richard S. Canciello, Esquire
  Ronald J. Garber, Esquire

  (*Via CM/ECF Electronic Mail*)