IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN ZINC RECYCLING CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | Civil Action No. 15-198 |
| ) | |
| ) | Magistrate Judge Dodge |
| TOPCOR AUGUSTA, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff, American Zinc Recycling Corp. ("AZR"), brings this action for breach of contract and breach of warranty against Defendant TOPCOR Augusta, LLC ("TOPCOR"). Its claims arise out of agreements between the parties for TOPCOR to apply specified coating systems to the interior and exterior of five electrolyte tanks and to the exterior of concrete in the secondary Containment Area at a facility that was being constructed in North Carolina.

Presently pending before the Court for disposition is TOPCOR's motion for summary judgment. For the reasons that follow, TOPCOR's motion will be denied.

**I.   Relevant Procedural History**

This action was commenced by Horsehead Corporation ("Horsehead") in February 2015. The Complaint alleged claims for breach of contract (Count I), breach of warranty (Count II) and indemnification (Count III). On August 29, 2018, a Report and Recommendation ("R&R") was issued by Magistrate Judge Mitchell (ECF No. 103), recommending that a motion for summary judgment filed by TOPCOR (ECF No. 76) be granted as to Count III and denied as to Counts I and II. On January 11, 2019, Judge Cercone adopted the R&R as the opinion of the Court (ECF No. 109). The parties subsequently consented to jurisdiction before the undersigned magistrate

judge (ECF No. 119). By order dated April 24, 2020, the Court granted Horsehead's motion to amend the caption of the case to substitute "American Zinc Recycling Corp." for "Horsehead Corporation."(ECF No. 133.)

Defendant filed the instant motion on May 15, 2020 (ECF No. 138). The motion has been fully briefed (ECF Nos. 139, 143, 151, 155). Oral argument was held on July 7, 2020.

## II. Relevant Factual Background

### A. Nature of Claim

The claims in this case arise out of work performed at a zinc and diversified metals production facility (the "Plant") located on property located in Mooresboro, North Carolina (the "Property"). According to the Complaint, Horsehead began construction of this facility in 2011. (Compl. ¶ 11.) The equipment used in the production process includes large steel tanks used to store electrolytes. (*Id.* ¶ 12.) In 2012, Horsehead and TOPCOR entered into a contract pursuant to which TOPCOR would perform certain work, including application of coatings to five electrolyte tanks (the "Tanks"). Horsehead paid TOPCOR for the Work, and Horsehead and AZR have utilized the Tanks and the Plant for their operations. (Plaintiff's Statement of Additional Facts ¶¶ 1-3.)[1]

Each of the Tanks is 40 feet in height with a diameter of 40 feet and a capacity of around 357,000 gallons. They sit on concrete pads in a containment area (the "Containment Area") and are connected by piping to other equipment at the Plant. The Plant also includes maintenance ponds. (Defendant's Concise Statement of Material Facts Not in Dispute ("DCSMF") ¶¶ 1-4.)[2]

---

[1] ECF No. 144 at 6.
[2] ECF No. 140. In its response (ECF No. 144), AZR admits almost all of the facts cited by TOPCOR but states that they are immaterial.

According to the Complaint, after TOPCOR completed its coating work, all of the Tanks leaked, causing electrolyte solution to seep through the coating and erode the tank walls. (Compl. ¶¶ 32-34.) AZR claims that while TOPCOR repaired the leaks, this only partially addressed the damages sustained by AZR due to TOPCOR's allegedly improper work. (*Id.* ¶ 36.) It asserts that TOPCOR breached the parties' contract and its warranty.

In November 2015, after this action was commenced, the parties entered into a Stipulation after one of the Tanks suffered another leak on or about August 20, 2015 and AZR intended to claim additional damages against TOPCOR as a result (the "Additional Tank Leak Allegations"). As stated in the Stipulation, the parties agreed that it would serve as a substitute for AZR filing an amended complaint and TOPCOR filing an amended answer regarding the Additional Tank Leak Allegations.

The damages claimed by AZR have changed over time. AZR is presently claiming damages of more than $2.7 million. They include $1,482.110.80 for replacement of all interior coatings and some of the exterior coatings for four of the Tanks by New Kent Coatings for; $479,701.00 for repair and replacement of coatings by Infratech Services for a fifth Tank; and $300,158.16 for tank repairs by Fisher Tank on all five Tanks. (*Id.* ¶¶ 14-15.)[3] "Initial repairs" were done in 2014 and 2015 and "full repairs" were performed in 2018 and 2019.

TOPCOR notes that neither the Complaint nor the Stipulation/Amendment to the Complaint allege that that Horsehead paid for the alleged repairs without full knowledge of the facts or as a result of fraud or duress by TOPCOR, HMPI, HMPL, or AZP. Similarly, AZR has not claimed that it was pressured by anyone, including HMPI, HMPL, AZP, or TOPCOR, to pay

---

[3] TOPCOR's figure for Fisher Tank is $314,816.32, but this appears to be incorrect. The amounts listed on Defendant's Exhibit D-347 (ECF No. 141 Ex. 21) for Fisher Tank add up to $300,158.16, as AZR indicates.

for repairs and costs related to property owned by HMPI, HMPL, or AZP, or that TOPCOR committed any fraudulent acts that prevented AZR from knowing it was paying for repairs to property that it did not own. (*Id.* ¶¶ 47-48.)

AZR's damages do not include any claims by third parties. (ECF No. 103 at 54.). Its corporate designee testified that AZR is unaware of any claims made against AZR by AZP or by HMPI or HMPL against Horsehead. (*Id.* ¶¶ 49-51.)

      B. <u>Corporate History of Horsehead and Related Companies</u>

Horsehead Corporation was incorporated in Delaware on May 21, 2003. Horsehead Metal Products, Inc. ("HMPI") was incorporated in North Carolina on September 27, 2012. On September 30, 2014, HMPI was converted to a limited liability company with the name of Horsehead Metal Products, LLC ("HMPL"). (DCSMF ¶¶ 16-18.) On February 2, 2016, Horsehead and HMPL filed bankruptcy petitions under Chapter 11 and later emerged from bankruptcy on September 30, 2016. After Horsehead emerged from bankruptcy, it filed a Certificate of Amendment to its Certificate of Corporation with the Secretary of State of Delaware, changing its name to American Zinc Recycling Corp. ("AZR"), effective as of May 1, 2017. After emerging from bankruptcy, HMPL filed an Amendment of Articles of Organization with the Secretary of State of North Carolina, changing its name to American Zinc Products, LLC ("AZP"), also effective as of May 1, 2017. (*Id.* ¶¶ 19-21.) Thus, Horsehead became AZR and HMPL became AZP.

Horsehead was the sole shareholder of HMPI and was the sole owner and member of HMPL. (*Id.* ¶¶ 22-23.) AZR is the sole owner and member of AZP.

Horsehead sold and conveyed the Property to HMPI by warranty deed that was filed and recorded on October 31, 2012 in Rutherford County, North Carolina. The Plant, which includes

the five Electrolyte Tanks, the Containment Area and the maintenance ponds, is located on the Property. During the relevant time periods, HMPI owned the Property between April through September of 2014, HMPL owned the Property from October 2014 through 2015, and AZP owned the Property during 2018 and 2019. For tax years 2014, 2015, and 2016, HMPI listed itself as the owner of the furniture, fixtures, and real estate located at the Property in forms filed with the Rutherford County, North Carolina Revenue Department ("Certified Property Listings"). In its Property Listing for the 2015 Tax Year, HMPI included a detailed itemization of its equipment, which included the Tanks. For tax years 2018 and 2019, AZP listed itself as the owner of the real estate, machinery and equipment located at the Property. In its Property Listing for the 2019 Tax Year, AZP included a detailed itemization of its owned equipment, which included the Tanks.

On the Property Listing forms for Tax Years 2014 and 2015, a principal officer or officially empowered full-time employee of HMPI affirmed under "penalties prescribed by law" that "to the best of my knowledge and belief, this listing, including accompanying statements, schedules, and other information, is true and complete." For the Property Listing forms for tax years 2018 and 2019, the Plant Controller, a full-time employee of AZP, affirmed under "penalties prescribed by law" that "to the best of my knowledge and belief, this listing, including accompanying statements, schedules, and other information, is true and complete." (*Id.* ¶¶ 29-35.) The Property Listing forms for the Tax Years 2018 and 2019 also provided that a person signing other than the taxpayer was affirming that he was familiar with the extent and true value of all of the taxpayer's property subject to taxation in the county and that his affirmation was based on all information of which he has knowledge.

In the tax records of Rutherford County, North Carolina, the Revenue Department sent the tax bills for 2014, 2015, and 2016 to HMPI as the owner of the real property and personal business property located at the Property and sent the tax bills for 2017, 2018, and 2019 to AZP as the owner of the real property and personal business property located at the Property. (*Id.* ¶¶ 36-37.)

Thus, at all times relevant to the claims asserted in this action, neither Horsehead nor AZR owned the Property or the machinery and equipment located on the Property.

    C.  <u>Agreements Among the Corporate Entities</u>

There are no agreements, understandings, or contracts that required Horsehead to pay for any damages to the Property or business property owned by HMPI or HMPL; similarly, AZR and AZP did not enter into any agreement that requires AZR to pay AZP for damages to its Property or its business property. (Burkett Dec. 2019 30(b)(6) Dep. 73-74, 1, 5-8; Dep. Ex. 268A.)[4]

The only agreements of record in this case with respect to these parties are the Operating Agreement of Horsehead Metal Products, LLC (HMPL) dated September 30, 2014 (the "Operating Agreement") and the First Amended and Restated Limited Liability Company Agreement of Horsehead Metal Products, LLC (HMPL) dated September 30, 2016 (the "First Amended Operating Agreement").  Neither the Operating Agreement nor the First Amended Operating Agreement required Horsehead to repair or replace any property owned by HMPI or HMPL, to pay for any damages to any real property or other property of HMPI or HMPL or to pay for repairs or replacement of the Tanks, coatings for the Tanks, costs to empty the Tanks, process the emptied electrolyte, transport the processed emptied electrolyte, or other costs in connection with or as a result of such repairs or replacement. The First Amended Operating

---

[4] ECF No. 141 Exs. 1, 15.

Agreement provided in Section 13(a) that "except as otherwise required by the Act [the North Carolina Limited Liability Company Act, N.C. Gen. Stat. Ann. § 57D-1-01, et. seq.] neither the Member nor the Managers shall be liable for the debts, obligations or liabilities of the Company, whether arising in contract, tort, or otherwise by reason of being a member or manager of the Company." Both the Operating Agreement and the First Amended Operating Agreement were to be construed and enforced in accordance with North Carolina law. (DCSMF ¶¶ 40-46.)

### III.  Analysis

#### A.  Standard of Review

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate if there are no genuine disputes as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary

judgment even if no opposing evidentiary matter is presented." *National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

"A federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citation omitted). The parties agree that Pennsylvania law applies to this case.

B.  The Voluntary Payment Doctrine

Courts have varied in their description and analysis of the voluntary payment doctrine. The voluntary payment doctrine has sometimes been described as follows: "when, under a mistake of law, one voluntarily and without fraud or duress pays money to another with full knowledge of the facts, the money paid cannot be recovered." *Acme Markets, Inc. v. Valley View Shopping Ctr., Inc.*, 493 A.2d 736, 737 (Pa. Super. 1985).[5] *See also Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 661 (Pa. 2009) ("one who has voluntarily paid money with full knowledge, or means of knowledge of all the facts, without any fraud having been practiced upon him ... cannot recover it back by reason of the payment having been made under a mistake or error as to the applicable rules of law.")

Relying on the voluntary payment doctrine, TOPCOR asserts that it is entitled to judgment as a matter of law with respect to AZR's claims. It argues that both Horsehead and

---

[5] In *Acme Markets*, a shopping center tenant mistakenly paid $70,000 for maintenance of a parking lot despite the fact that its lease had expired. The court held that the tenant made a mistake of law based on an interpretation of the lease and therefore it could not recover the money paid.

8

AZR were volunteers in making the payments that AZR seeks to recover in this action and that neither had a legal obligation to do so because they did not own the Property, the Plant or its equipment when the claimed damages were sustained. The damages sought by AZR are for repairs to the Tanks, property that has always been owned by separate entities, not Horsehead or AZR. Thus, TOPCOR contends, AZR is barred from recovery because its payments to third-party vendors were entirely voluntary.

AZR argues that most of the cases cited by TOPCOR involved voluntary payments that were made to another party in the lawsuit, not to a third party. *See Dobson Park Mgmt., LLC v. Prop. Mgmt.*, 203 A.3d 1134, 1140 (Pa. Commw. 2019); *Takeda Pharms., U.S.A., Inc. v. Spireas*, 400 F. Supp. 3d 185, 219 (E.D. Pa. 2019); *Williams v. Enterprise Holdings, Inc.*, 2013 WL 1158508, at *2-3 (E.D. Pa. Mar. 20, 2013); *Abrevaya v. VW Credit Leasing, Ltd.*, 2009 WL 8466868 (E.D. Pa. July 22, 2009); *Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp.*, 2005 WL 1693931 (E.D. Pa. July 19, 2005); *In re Kent*, 2020 WL 2201641, at *21 (Bankr. W.D. Pa. May 5, 2020); *Ochiuto v. Prudential Life Ins. Co. of Am.*, 52 A.2d 228, 230 (Pa. 1947).

By contrast, AZR notes, it is not seeking recovery for money voluntarily paid to TOPCOR. Rather, its damages relate to payments made to third-party vendors to repair the Tanks due to TOPCOR's allegedly deficient work. AZR's claims are based on TOPCOR's alleged breach of the contract between them and the damages it sustained as a result. To the extent that TOPCOR asserts that AZR acted as a "volunteer" because it did not own the Tanks, AZR counters that this is irrelevant because it uses the Tanks in its zinc metal production process, it paid TOPCOR to perform work on these Tanks and paid third parties to fix TOPCOR's deficient work. AZR suggests that had AZP, the owner of the Tanks, sued TOPCOR,

9

TOPCOR undoubtedly would have contended that AZP was not a party to the contract, or otherwise was not the real party in interest.[6]

AZR also notes that at least one court has held that the voluntary payment doctrine only "applies when the money is paid by one party to another party in a prior action when both parties are involved in the present action." *Hamid v. Stock & Grimes, LLP*, 2012 WL 2135502, at *3 (E.D. Pa. June 12, 2012). "If money is paid to a non-party, the voluntary payment doctrine has no effect on the current suit." *Id.* (citing *Claremont Apts., LP v. Principal Commercial Funding II, LLC*, 2010 WL 2364305 (E.D. Pa. June 8, 2010)). "Moreover, the voluntary payment doctrine only applies where the payment is made because of a mistake of law.'" *Id.* (citation omitted). *See also Claremont*, 2010 WL 2364305, at *8-9. AZR also cites other decisions that hold that the doctrine is applicable when a party seeks recovery from the party to whom it made the voluntary payment. *See Acme Markets,* 493 A.2d at 737; *Liss*, 983 A.2d at 661; *Kline v. Morrison*, 44 A.2d 267, 269 (Pa. 1945).

TOPCOR counters that the voluntary payment doctrine is not limited to situations in which payment has been made to a party in a lawsuit. It notes that in *Gaul v. McLaughlin*, 217 A.2d 757 (Pa. Super. 1966), plaintiff's decedent, who had purchased property at a treasurer's sale, was precluded from recovering taxes from the former property owner. Likewise, it asserts that in *Guerry v. American Trust Co.*, 68 S.E.2d 272 (N.C. 1951), a landlord paid for repairs requested by a subtenant (but which were the responsibility of the tenant under the lease) and then sued the tenant for reimbursement. Because the landlord was under no legal obligation to make the repairs, the court held that its voluntary act of paying for them without notice to or

---

[6] At the oral argument, when asked what AZR should have done to avoid the voluntary payment doctrine "problem," TOPCOR responded that AZR could have asked AZP to repair the Tanks. However, TOPCOR did not dispute that AZP would have been unable to recover the amounts paid to TOPCOR given that AZP was not a party to the contract.

demand upon the tenant constituted a waiver in the nature of an estoppel. AZR argues that *Gaul* is completely distinguishable: the plaintiff in that case was attempting to recover the taxes from the party that should have paid them in the first instance. In addition, *Guerry* is akin to the cases discussed below, i.e., a party makes payments that are the legal obligation of another. As explained below, however, AZP was not legally obligated to repair the Tanks.

Significantly, TOPCOR has not cited any decisions that are comparable to the facts presented here. Simply put, AZR asked TOPCOR to perform certain work, claims that the work was inadequate and paid others to repair that work. Moreover, it has not demonstrated that AZR's payments to third parties to fix TOPCOR's allegedly flawed work was under a mistake of law. Clearly AZR had a legal right to enforce the contract and to mitigate its damages. There is no record evidence that AZR deceived TOPCOR about ownership of the Tanks or that TOPCOR would not have entered into a contract with AZR had it known that the Tanks, while used by AZR, were owned by another entity. Having contracted with TOPCOR to perform the work, AZR took action to hire third parties to repair the allegedly faulty work and then seek recovery from TOPCOR for its costs in doing so.

Other courts have analyzed the voluntary payment doctrine somewhat differently, defining it as follows: "one who voluntarily pays the obligations of another without any authority or promise to repay from the debtor is a mere volunteer and, generally, is not entitled to recover the amount paid." *Gallagher, Magner & Solomento, Inc. v. Aetna Cas. & Surety Co.*, 252 A.2d 206, 207 (Pa. Super. 1969) (en banc) (citing *Gaul v. McLaughlin*, 217 A.2d 757 (Pa. Super. 1966)). *See also Bednar v. Bednar*, 688 A.2d 1200, 1204 (Pa. Super. 1997) (joint tenants are not responsible to pay the proportionate share of property taxes owed by others and thus any payment made was voluntary and not recoverable).

Here, AZP, the owner of the Tanks, was under no legal obligation to repair its property. On the other hand, AZR clearly had the right to use the Tanks in its operations and to hire TOPCOR to perform work on these Tanks. Given this scenario, it is difficult to argue that the obligation to fix the Tanks was that of AZP, or that it had the right to enforce the contract between AZR and TOPCOR. Therefore, AZR did not voluntarily assume AZP's obligation; rather, it sought to repair work that it contends was in breach of the parties' contract and then pursue TOPCOR for the breach of its duties under that contract.

TOPCOR argues that AZP need not have been under a legal obligation, but even if this requirement applies, it did have a legal obligation to have the Tanks repaired because it could have been cited for violating environmental laws or to protect itself from being sued by individuals who were harmed at the plant. But as AZR points out, TOPCOR cites no legal authority or record evidence to support this position.

In summary, regardless of how the voluntary payment doctrine is defined, TOPCOR has failed to demonstrate that this doctrine applies here. AZR is not seeking to recover monies paid to TOPCOR under some mistake of law, nor is the cost of the necessary repairs the legal obligation of AZP under the facts of this case. Rather, AZR has brought claims against TOPCOR pursuant to the terms of the contract between them.[7] It argues that due to TOPCOR's breaches, it was required to repair the Tanks in order to use them in its operations. Simply put, the fact that Horsehead and AZR did not own the Tanks at the time the work was performed is irrelevant and does not make AZR a "volunteer" for purposes of this doctrine. AZR, not AZP, contracted with TOPCOR, paid money to TOPCOR and now seeks damages due what it claims is TOPCOR's breach. The Court concludes that AZR may properly pursue its claims.

---

[7] TOPCOR does not contend that AZR lacked the authority to enter into the contract because the Tanks were owned by some other entity.

12

Finally, TOPCOR notes that while the Court dismissed AZR's indemnification claim, AZR's remaining claims are merely an effort to recast this claim by seeking to recover damages to someone else's property. The Court disagrees. TOPCOR's first motion for summary judgment was granted regarding this claim because the indemnification clause in the contract covered only third-party claims. Here, AZR is not seeking damages from TOPCOR for third-party claims. There are no third-party claims in this case and the fact that the Tanks are not owned by AZR does not change the result. AZR alleges that it sustained harm as a result of TOPCOR's actions. Therefore, TOPCOR's argument that AZR is trying to revitalize the dismissed indemnification claim is unavailing.

### IV. Conclusion

For all of these reasons, TOPCOR's motion for summary judgment (ECF No. 138) will be denied. An appropriate order follows.

BY THE COURT:

Dated: August 10, 2020

s/Patricia L. Dodge_____
PATRICIA L. DODGE
United States Magistrate Judge